UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN MEROLA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RECREATIONAL EQUIPMENT, INC. and SAFEHANDS SOLUTIONS LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION AND PLAINTIFF'S CLAIMS

Plaintiff Steven Merola ("Plaintiff"), on behalf of himself and all others similarly situated, hereby submits the following Class Action Complaint ("Complaint") against Recreational Equipment, Inc. and SafeHands Solutions, LLC (collectively, the "Defendants") and upon personal knowledge as to his own acts and status, and upon information and belief, the investigation of his counsel, and the facts that are a matter of public record, as to all other matters, alleges as follows:

## NATURE OF THE ACTION AND PLAINTIFF'S CLAIMS

### Advertisement and Purchase of the SafeHands Product

1.  Defendants manufacture, advertise, market, label, distribute and sell an alcohol-free, topical antiseptic hand sanitizer product in a variety of sizes under the brand name "SafeHands" (the "Product").

2.  The Product is advertised and is available for purchase online throughout the United States through a website, https://www.rei.com/product/175143/safehands-alcohol-free-

1

2

hand-sanitizer (the "REI Website"), which is owned or controlled by Defendant Recreational Equipment, Inc. ("REI"), through a website owned or controlled by Defendant SafeHands Solutions, LLC, https://www.safehands.com/ (the "SafeHands Website"), and through the brick-and-mortar stores of Defendant Recreational Equipment, Inc., including stores located in Massachusetts.

      3.      The Product label, which is depicted on the REI Website and the SafeHands Website, respectively, represents that the Product kills 99.99% of all germs. The Product label depicted on the aforesaid websites appears as follows:



4.      On July 10, 2020, Plaintiff purchased the Product, as further described below, from the REI Website.

5.      At the time of Plaintiff's purchase of the Product from the REI Website, and as of today, the REI Website contained the following written representation concerning the Product:

"A proven alternative to alcohol sanitizers, this hand sanitizer kills 99.99% of common germs and bacteria, while also protecting against viruses and fungi"

3

6. The depictions and representations on the REI Website were co-created or co-developed by Defendants knowing that they would be viewed and accessible by Plaintiff and others purchasing the Product from the REI Website.

7. Defendant Recreational Equipment, Inc. is a Washington State-based office retail consumer business enterprise that operates as a specialty outdoor cooperative which, along with its subsidiaries, sells products in the United States including in Massachusetts through several brick-and-mortar retail stores located in Massachusetts and via the REI Website which is accessible in Massachusetts.

8. SafeHands Solutions, LLC. is a Massachusetts-based company that manufactures, advertises, markets and sells an alcohol-free hand sanitizer in various sizes and configurations having identical ingredients, and having as its main active ingredient "benzalkonium chloride," under the brand name "SafeHands" (the "Product").

9. REI realizes revenue from the advertisement and from the sale of the Product on the REI Website.

10. The greater the number of sales of the Product from the REI Website, the greater the revenues realized by REI.

11. SafeHands realizes revenue from the sale of the Product.

12. The greater the number of sales of the Product, the greater the revenues realized by SafeHands.

### Effect of the Covid-19 Pandemic on Hand Sanitizer Sales and Government Pronouncements

13. The recent pandemic of the potentially fatal coronavirus has prompted increased interest in so-called "germ killing" hand sanitizer products.

4

14. Many hand sanitizers are made with either ethanol or isopropanol alcohol as its primary active ingredient.

15. Alcohol-based hand sanitizers are recognized by the United States Food & Drug Administration (the "FDA") as effective in reducing bacteria and germs on the skin.

16. However, the FDA has indicated that even alcohol-based hand sanitizers have not been shown to be effective to kill a variety of germs that cause certain viruses.

17. The FDA does not permit manufacturers, advertisers, or sellers of even alcohol-based hand sanitizers to make representations as to illnesses that the product will prevent or that germs and/or bacteria that it will "kill".

18. The Center for Disease Control (the "CDC") has formally stated that *non-alcohol* based hand sanitizers, such as the Product, whose primary active ingredient, benzalkonium chloride, *"has less reliable activity against certain bacteria and viruses than…alcohol[]"* based sanitizers.

19. The Product competes in the marketplace directly with numerous other hand-sanitizer products, including those containing significant percentages of alcohol as their primary active ingredient.

20. Preying upon the crisis caused by the coronavirus, Defendants have consistently promoted, marketed and advertised the *alcohol-free* Product as effective in killing "99.99% of germs."

**Plaintiff's Purchase of the Product from the REI Website**

21. On July 10, 2020, Plaintiff purchased two 1.75-ounce bottles of the Product from the REI Website for a purchase price (excluding shipping of $ 5.99) of $ 15.99 plus sales tax of $. 99.

5

22. At the time of Plaintiff's purchase of Plaintiff's Product, the REI Website depicted the front portion of the Product label which contained a representation in prominent print as follows: ***"Kills 99.99% of Germs."***

23. At the time of Plaintiff's purchase of Plaintiff's Product, the REI Website contained an additional representation in prominent print as follows: ***"A <u>proven</u> alternative to alcohol sanitizers, this hand sanitizer kills 99.99% of common germs and bacteria, while also protecting against viruses and fungi."*** (emphasis added).

### The Defendants' False and Misleading Advertisement of the Product

24. Despite the Product label and additional representations on the REI Website (individually and collectively, the "Representation(s)") concerning the killing of 99.99% of germs and protecting against viruses, there are no reliable studies that support the Representations, nor is the Product a "proven" alternative to alcohol-based hand sanitizers.

25. On information and belief, the Product does not kill and/or protect against a variety of germs and/or bacteria including certain germs/bacteria that cause a variety of diseases (the "Diseases"), including certain strains of influenza, the common cold, norovirus and SARS CoV-2, the illness causing COVID-19 (i.e., coronavirus disease 19).

26. The Product is not a "proven" alternative to alcohol-based hand sanitizers as the Product's efficacy is substantially less than such alcohol-based hand sanitizers.

27. By each Representation, reasonable consumers are led to believe that proper use of the Product will prevent the Diseases or substantially reduce the risk of contracting the Diseases and will kill at least 99.99% of all germs that cause all illnesses in human beings, including germs causing Covid-19.

28. Each Representation is false and misleading as the Product when used as directed does not kill 99.99% of all germs, including germ-causing viruses.

29. Each Representation is harmful, deceptive and misleading to consumers and other purchasers because it gives the misleading impression that using the Product will prevent the Diseases and all other human illnesses.

30. SafeHands collaborated with REI to co-create, co-develop and advertise the Product on the REI Website containing the Representation.

31. SafeHands designed the Product's label and manufactures, advertises, distributes and sells the Product.

32. Each Representation allows Defendant SafeHands to unlawfully increase its revenues derived from sales of the Product.

33. Each Representation allows Defendant REI to unlawfully increase its revenues derived from sales of the Product on the REI Website and in REI brick-and-mortar stores

34. Each Representation gives Defendants a competitive edge over many competing products including, by example, competitive products that expressly state that the product is effective in (a) "decreasing" (as opposed to killing) bacteria or germs on the skin; and/or (b) merely limiting the efficacy of the product to explicitly stated and specified germs and/or bacteria.

35. The Product is unable to provide the outcomes promised by the Defendants in the Representations.

36. The Defendants' marketing of the Product with the Representations is designed to – and did – to the knowledge of Defendants, deceive, mislead and defraud consumers and others that purchased the Product, including Plaintiff and the Class.

37. The Defendants' conduct caused Plaintiff and others similarly situated to suffer damages requiring disgorgement and restitution as well entitling them to injunctive relief.

38. The Defendants' false, deceptive and misleading advertisement, marketing and sale of the Product has enabled Defendants to sell more of the Product than they would have in the absence Defendants' misconduct.

39. The Defendants' false, deceptive and misleading advertisement, marketing and sale of the Product has enabled Defendants to sell the Product at higher prices per unit than they would have in the absence Defendants' misconduct.

40. Defendants' misconduct as alleged above results in additional revenues realized and received by the Defendants at the expense of consumers and other purchasers of the Product.

41. The value of the Plaintiff's Product as purchased by consumers (and others) was materially less than its value as represented and/or sold by the Defendants.

42. Had Plaintiff and class members known the truth, they would not have bought the Product, or would have paid less for it.

43. As a result of the false and misleading advertisement and sale of the Product, Plaintiff and the members of the class have paid excess sales taxes associated with their purchases.

44. As a result of each false and misleading Representation, the Product is sold at a premium price compared to other hand sanitizer products that are sold in a way that is not misleading.

45. As a result of each of Defendants' false and deceptive Representations, Plaintiff and the other members of the proposed Class have purchased a product that has not been proven to perform as advertised. This action seeks to obtain redress for purchasers the Product, and to enjoin Defendants' deceptive and unlawful advertising as well as to obtain other equitable relief.

Plaintiff brings this lawsuit against Defendants on behalf of himself and all other similarly situated who purchased the Product in the United States during the class period set forth below.

## JURISDICTION AND VENUE

46. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of Plaintiff and members of the Class, which exceeds one hundred persons, exceed the sum or value of $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between at least one member of the proposed Class and each Defendant.

47. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts and transactions giving rise to the claims occurred in this District.

48. This Court has personal jurisdiction over the Defendants because they conduct business in Massachusetts via their online sales, because Defendant SafeHands is organized under Massachusetts law and has its headquarters in Wilbraham, Massachusetts, and because Defendant REI sells its goods and products through its retail brick-and-mortar stores located in the Commonwealth of Massachusetts.

## PARTIES

49. Plaintiff Steven Merola is a resident of North Andover, Massachusetts, and was exposed to Defendants' deceptive and misleading statements (i.e., the Representation) in Massachusetts through purchase of the Product from the REI Website on July 10, 2020. Had Plaintiff known the truth concerning the Representation, he would not have purchased the Product.

50. Defendant Recreational Equipment, Inc. is a consumer cooperative corporation organized and existing under the laws of the State of Washington, with its principal place of business in Bellevue, Washington.

51.   Defendant SafeHands Solutions, LLC. is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Wilbraham, Massachusetts.

52.   At all times herein, Defendants' respective agents, employees, representatives, and owners, were acting within the course and scope of such agency, employment, and representation, on behalf of Defendants.

## CLASS ACTION ALLEGATIONS

53.   Plaintiff sues under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of himself and a Class defined as follows:

> all persons who purchased the Product in the United States, during the period from August 8, 2017 until a class is certified. The Class consists of a subclass of all persons who purchased the Product in the Commonwealth of Massachusetts from the REI Website. Excluded from the Class are defendants and their parent and subsidiary entities and successors.

54.   The definition of the Class is unambiguous.

55.   Plaintiff is a member of the Class he seeks to represent.

56.   Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of Defendants' business.

57.   Class Members are so numerous and geographically dispersed such that the individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendants' records. Class members may be notified of the pendency of this action by recognized, Court approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

58. Additionally, common questions of law and fact predominate over the questions affecting only individual Class members. Some of the common legal and factual questions include:

   a   Whether Defendants had adequate substantiation for each Representation prior to making it;

   b   Whether each Representation is true, or is misleading, or reasonably likely to deceive;

   c   Whether Defendants knew or should have known that the Representation was false or misleading or reasonably likely to deceive;

   d   Whether the Defendants' alleged misconduct constitutes violations of the laws asserted herein;

   e   Whether Defendants have been unjustly enriched because of the Representation;

   f   Whether Defendants are engaged in unfair and/or deceptive advertising with respect to the Product;

   g   Whether Plaintiff and members of the Class have been injured by Defendants' conduct; and

   h   Whether Plaintiff and the Class are entitled to relief, and the amount and nature of such relief.

59. The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts—Defendants' misconduct of uniformly misrepresenting the Product.

11

60. In each case Defendants have marketed the Product in a uniformly unfair and deceptive manner through the use of the Representation.

61. Plaintiff's claims are typical of the claims of the other Class members because Plaintiff, like all Class Members, bought the Product and was actually deceived.

62. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is familiar with the basic facts that form the basis of the Class members' several claims. Plaintiff's interests do not conflict with the interests of the other Class members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

63. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members. The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. It would be virtually impossible for the Class members to seek redress individually. Even if the Class members themselves could afford such individual litigation, the court system could not.

64. Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class members' claims Class will be easily managed by the Court and the parties.

65.     **Declaratory Relief. Fed. R. Civ. P. 23(b)(2).** Class certification is also appropriate under Rule 23(b)(2) because each Defendant through its uniform conduct has acted or refused to act (and continues to act or refused to act) on grounds that apply generally to the Class as a whole, thus making final injunctive relief or corresponding declaratory relief appropriate respecting the Class as a whole.

## FIRST CLAIM

**(For Violations of Untrue and Misleading Advertising under Mass. Gen. Laws c. 266, § 91)**

66.     Plaintiff incorporates the above allegations by reference as if set forth herein in full.

67.     Defendants' marketing, advertising, and promotion and sale of the Product is untrue, deceptive, and/or misleading, in violation of Mass. Gen. Laws c. 266, § 91.

68.     At all times relevant to this action, Defendants knew, or could have, upon reasonable investigation, ascertained that the labeling, marketing, advertising, promotion and sale of the Product was untrue, deceptive, and/or misleading.

69.     Defendants' untrue, deceptive, and/or misleading marketing, advertising, promotion and sale of the Product has continued throughout the Class Period and is continuing as of the present date.

70.     As a purchaser of the Product who was damaged by Defendants' untrue, deceptive and/or misleading advertising and sale of the Product (in that Plaintiff and the other Class members purchased a product that did not conform to the representations made about the Product by Defendants), Plaintiff is entitled to and does bring this class action to seek all available remedies under Mass. Gen. Laws c. 266, § 91, including injunctive relief. The injunctive relief

would include an order directing Defendants to cease their false and misleading advertising of the Product, and publish and disseminate corrective advertising.

## SECOND CLAIM

### (Unjust Enrichment)

71. Plaintiff incorporates the above allegations by reference as if set forth herein in full.

72. Defendants marketed and sold the Product based on its advertised ability to kill 99.99% of all germs, as further described above. However, the Product does not have such capabilities, as further described above.

73. By purchasing the Product, Plaintiff and the Class have conferred a significant monetary benefit on Defendants, which benefit is known and has been appreciated by Defendants.

74. Retention by Defendants of the benefit conferred by Plaintiff and the Class would, under the circumstances, be inequitable.

75. Plaintiff, on behalf of himself and the Class, seeks restitution or, in the alternative, imposition of a constructive trust on the funds inequitably received and retained by Defendants from the sale of the Product made by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for judgment against Defendants as follows:

A. An Order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B. An Order awarding restitution and disgorgement of Defendants' revenues from sale of the Product to Plaintiff and each member of the Class;

C. An Order awarding equitable relief, including the following: enjoining Defendants from continuing the unlawful false advertising practices as set forth herein, directing Defendants to engage in a corrective advertising campaign, directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution, and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

D. An Order imposing a constructive trust on Defendants ill-gotten revenues from sale of the Product;

E. An Order awarding the greater of actual damages (including double or treble damages) or statutory damages, as allowable by law;

F. An Order awarding attorneys' fees and costs to Plaintiff and the other member of the Class; and

G. Such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

Dated:   August 11, 2020                    Respectfully submitted,

/s/ Edward L. Manchur
Edward L. Manchur (BBO #316910)
P.O. Box 3156
Peabody, MA 01960
Phone: (978) 333-1013
manchurlaw@gmail.com

*Counsel for Plaintiff Steven Merola*

15